Good morning, Your Honors. Amy Kempel, Federal Defenders, on behalf of Mr. Chavez-Tello. The District Court has power to initiate revocation proceedings, and therefore it follows that they have power to dismiss those proceedings. The District Court, in the context of revocation proceedings, plays many roles and possesses a panoply of powers. Because of the unique relationship between the District Court judge and the supervisee. It initiates proceedings. It acts as fact finder. It determines sentence. And because the court is considering a breach of trust between the court and the supervisee, it also is sometimes cast as the role of the victim. It plays the role of prosecutor, grand jury, jury, judge, and victim. The District Court judge, in this case, failed to comprehend that power, believing it lacked any legal authority to grant Mr. Chavez-Tello's motion to dismiss the revocation proceedings. Because it believed it lacked that authority, when it did possess that authority as part of its inherent authority, it abused its discretion. And the case must be remanded for the District Court judge to consider the exercise of discretion. I'm trying to keep your voice up a little. Okay. Last time you told me to slow down, so now I'm trying to slow down. No, no, no. I know. It all depends on what hearing aids I'm wearing. It's got nothing to do with you. Are you contending, counsel, that the court's inherent powers, its supervisory powers, so it can dismiss revocation proceedings regardless of whether there's any kind of defects or due process issues? I don't – I wouldn't go so far as to say the District Court's power is unlimited. But I think it does possess more power to dismiss a petition in an OSC proceeding than it would, for example, to dismiss an indictment. The government, in its briefing, discusses a lot of the case law relating to the dismissal of a grand jury indictment. And I think that case law doesn't quite apply to this context because it implicates separation of powers concerns which don't apply in the revocation context. In the case law that the government cited to, for example, in Jennings, one of the concerns that the court had about the District Court's ruling about the prosecutor personally reviewing the personnel files was that it interfered and intruded in the executive function. Similarly, in Hastings, the Supreme Court expressed concern that the District Court judge had dismissed an indictment because of minor, if any, according to the concurrence, prosecutorial misconduct, especially given that that case arose from a kidnapping and violent rape context. And the court said that it was concerned about the victims and having to go through that whole procedure and the public. Those concerns are not really present in the revocation proceeding context because the revocation is not about punishing an underlying offense. It's about sanctioning the breach of trust. Again, there's not intruding on the prosecutor's function because they're the ones who are initiating the proceeding in the OSC context, as we know from Mejia-Sanchez. The government is trying to impose formalistic procedures on revocation proceedings when the rule in revocation proceedings is about flexibility. And we know that from United States v. Siegel, United States v. Santana, and United States v. Mejia-Sanchez. I mean, there's not even an – again, the OSC proceeding is just a very different beast than a new criminal prosecution. There's no right to a great jury indictment. There's no right to Fourth Amendment suppression. There's no right to a jury trial or proof beyond a reasonable doubt. The strictures of the Speedy Trial Act don't apply, and Rule 11 doesn't apply, as we know from Siegel. I want to discuss briefly the government's argument about waiver. And they, again, have cited two cases in the context of a new prosecution and a guilty plea governed by Rule 11 rather than an admission at a revocation proceeding. That case law, particularly Henderson, talks about there being a significant break in the proceedings at the guilty plea colloquy, and that just isn't true about a revocation proceeding. Again, as we know from Siegel, where they say that Rule 11 doesn't apply and, you know, and it's not this fundamental change. We aren't changing from somebody who is at that point presumed innocent and has a not-guilty plea to somebody who has the stigma of a criminal conviction. In an OSC revocation proceeding, the defendant already has that stigma of a criminal conviction before the revocation proceeding even initiates. Secondly, if Rule 11 doesn't apply and you aren't afforded the protections of Rule 11, as we know under Siegel, then you also the government shouldn't be able to benefit from that waiver argument. One of the reasons that appeal of underlying issues is waived in a Rule 11 colloquy is because the judge discusses the right to appeal, which doesn't happen in the context of the admission proceeding. And in this case, the court, after the admission was made, informed Mr. Chavez-Tejo that he would have the right to appeal the orders and the sentencing that had been imposed. And the government, even knowing at that point, because we had said on the record we had noted the denial of the motion, invoiced a possibility of an appeal, the government actually told the court to advise Mr. Chavez-Tejo about his right to appeal and never piped up to say that he had waived the issue of the motion to dismiss being denied. Can you help me with a statutory question? And that is, I'm looking at 3583e, which talks about modification of conditions of conditions or revocation. And e1 says that the court may terminate a term of supervised release and discharge of the defendant released at any time after the expiration of one year of supervised release pursuant to the provisions of Federal Supreme Procedure if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. I gather you're arguing that the district judge has more power than is authorized under this statutory section. Is that right? I think, yes. And so how – I mean, this is a fairly carefully drafted provision. It's more than one year. And if the district judge determines that it should be terminated based upon the conduct of the defendant who's been released and in the interest of justice, I have trouble, once I've read that, saying that the district judge has greater power to terminate when the power to terminate is so specifically described. Help me out because I'm not sure I can get where you want to get me. Okay. I mean, one of the reasons I mentioned 3583e in my briefing is just to say that there is at least some indication that these proceedings can end without a contested hearing or without an admission. So there is allowance for that. And I think that WR-Grace is illustrative because the government tries to read the inherent authority of a district court and its supervisory powers to be limited to the three circumstances listed in Hastings. But in footnote 9 of WR-Grace, they very clearly say that those three bases enumerated in Hastings are not an exhaustive list and that there are other ways in which a district court can exhibit their inherent authority and supervise what's going on in their courtroom, the cases and their docket and their caseload. And the analysis in WR-Grace is about whether what the district court in that case, which was making the government submit a final witness list about a year before the trial, exceeded their powers, their inherent powers. And though Rule 16 talks about some mandatory things that the judge can do, what they that in its ruling. So I don't so I think there is a slightly broader inherent authority that the district court possesses. I think it's at its zenith in revocation proceedings as opposed to in the context of the new criminal prosecution. But I also think that nothing we were asking the district court to do would be contravened by 3583E, because we were essentially saying that it serves the interest of justice to dismiss this prosecution, this revocation hearing, because it was redundant in light of the 24-month sentence that Mr. Chavez had received in the new prosecution, which was four times what he had gotten in the case in front of Judge Somertino in the first instance. So there had been a fourfold increase in his penalty. And the commentary in Note 5 to the Guidelines and Amendments of 5E1.1c talk about the fact that the applicable 3553A factors aren't really served in the case of a deportable alien by imposing supervised release, because the only factors that really apply are deterrence and protecting the public. And those can be served by the new prosecution. This whole idea of rehabilitation, reintegration, is just not present when someone's being deported. I guess I'll stop and save some time. Okay. Thank you. May it please the Court, David Finn, Special Assistant United States Attorney on behalf of the United States. For the first time on appeal, the appellant raises the issue of whether the district court should have sui sponte and considered the issue of whether it had supervisory powers to dismiss the OSC for in the interest of justice.  Because this is raised for the first time on appeal, the correct standard of review is plain air. And under the plain air standard, the appellant cannot meet its burden to show prejudice. And the expert of record on page 9, District Judge San Martino, very clearly and unequivocally stated, even if I did have the power to go back and look at this OSC and re-adjudicate whether I would have initiated it in the first instance, I would do so based upon the conduct of the defendant in this situation. Because that standard applies, the plain air, and because the district court clearly said, essentially, if this case would be remanded, that the court would not dismiss the OSC under its discretion, the appellant's contentions are without merit. The plain air standard applies in this case, clearly, because there's nowhere in the record where defense counsel raises the issue before the district court. The citation that defendant provides to reach this argument is that the district court says, the defense has provided me no authority to dismiss this OSC. The defendant has provided no legal authority to me to dismiss this OSC. Nowhere in the record does the district court mention that the district court doesn't have any inherent authority. The issue is simply not before the district court. And under ye v. Escondido, it's unfair to have the district court's decision reviewed on appeal when there's no record and it's not brought before the district court under any other standard than the plain air standard. Under the plain air standard, this defendant, again, lacks discretion, lacks merit, because the appellant cannot show prejudice in this case to the district court's decisions. Finally, addressing the issue of whether the supervisory powers would extend to this case, the Court asked a very good question earlier about whether it's unlimited power in supervisory release revocation hearings and whether it's limited, limitless. And clearly it's not. The procedures are laid out in Federal Rule of Civil Procedure 32.1 and in 18 U.S.C. 3583. Those procedures guide the district court in these proceedings and provide the rules and situations under which it may dismiss an OSC, specifically under 3583e, that it may, after finding a revocation, terminate the proceedings in the interest of justice and based upon the conduct of the defendant. Here, defendant and appellant are arguing that that equates to a much more broad power than what is actually enumerated in that statute, that the supervisory release powers, I'm sorry, the supervisory powers extend much greater due to that language. But that's clearly, it's limited in that situation. There's no record to suggest that that particular situation applies in this case, and appellant's argument under that statute is without merit. Unless there's any further questions, I will sit down. I was just thinking of the possibility, since the guidelines have been amended, telling us that the court ordinarily shouldn't impose a supervised release term in a case where you have a deportable alien who will likely be deported after imprisonment, whether the question of, well, in light of that guideline, whether we ought to send the case back to the district court to exercise its discretion. Now that we have a pretty clear statement from the sentencing guidelines about not holding people to probation or not imposing probation if they're going to be removed from the country as soon as they leave prison. If this case was remanded, and the judge did consider it under the guidance in the new 5D1.1 rule, the judge did consider that in this case. If that situation were to happen, and with the new guidance under 5D1.1, even if I was to retroactively go back and apply that standard, I would still, in that situation, impose a term of supervised release. And clearly, the judge had good cause to do that, because as the record bore out, the defendant did need additional deterrence in that case, as evidenced by his subsequent illegal reentry. In other words, the 5D1.1, while ordinarily a term of supervised release shouldn't be imposed, it can be imposed when the need for additional deterrence is present. Clearly, in this case, the need for additional deterrence wasn't present, as evidenced by the defendant's conduct. But I think that goes to the court's question, the crux of the matter in this case, which is that even if that, in fairness, the judge did consider that, and I think the judge kind of gave an indication that she did kind of consider specifically that comment in 5D1.1 when determining that, no, this is not a case where I'm going to terminate in the interest of justice or anything else, I'm going to stay behind my imposition of supervised release and revoke it in this case. There was a plea agreement that negotiated for supervised release to follow a term of imprisonment. Is that right? Yes, Your Honor. And I think that's definitely a consideration that the district court considered, that this defendant got the benefit of his bargain in that underlying proceeding by a plea agreement in which he applied to a much less serious charge in exchange for the recommendation of supervised release. So considering, for instance, in the interest of justice, the district court did consider that, I think, and she mentions it very specifically in the record. He got the benefit of the bargain in this case. So to now, after violating the court's trust and going back, does he, you know, would he then get to basically have his cake and eat it, too, on that and not be subject to that term of supervised release? And the district court judge clearly said that that's not the interest of justice in this case. Thank you. Just briefly, I don't think plain error applies here because filing the motion to dismiss implies that we thought the court had power to grant it. So I don't think that we're, as Justice Fletcher said earlier, sandbagging the district court by presenting arguments that the district court had power to grant that were not for them below. And the court did say in its ruling they find no legal basis to warrant dismissal. In an earlier argument. No, it was the prosecutor who talked about sandbagging. Oh, I'm sorry. I misspoke. That's okay. There was some discussion. There was some discussion of sandbagging. I'll totally grant you that. And I don't think, if I can use the term sandbagging, whether for the first or second time, I frankly can't remember. I don't think you sandbagged. That is to say you asked for it. And what the district judge says, well, after you asked for it, you didn't give her enough authority that would support her ability to do it. I think, I mean, the district court judge said there's no provision for retroactive application under the guidelines. But there was no prohibition against it either. And the discretion that the district court did exercise was respect to the motion to reconsider whether supervised release should have been imposed in the first instance, a ruling that we are not appealing here. We're only appealing the denial of the motion to dismiss. And she did not exercise her discretion with respect to that issue. And just so the Court's aware, judges are declining to impose supervised release in the cases of deportable aliens. Yesterday I had a sentencing in front of a different district court with a four-time 1325 and 1326 recidivists who declined to impose supervised release, I think because of the idea that it would be redundant rather than the idea that someone sort of merited it. So I just would add that. It will cost money too, doesn't it? Exactly. Trying to balance the budget. I didn't mean that you used the term sandbag. Mr. Left. All right. We're through. Thank you. Submitted.
judges: Pregerson, Fletcher, Nguyen